IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DEBBIE BLEVINS aka DEBORAH MARIE BLEVINS, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | CIVIL ACTION NO:_____ |
| TYLER CARDIOVASCULAR CONSULTANTS, P.A., | § § § § | |
| *Defendants*. | § | DEMAND FOR JURY TRIAL |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND**

TO THE HONORABLE JUDGE:

Plaintiff, Debbie Blevins aka Deborah Marie Blevins, files this Plaintiff's Original Complaint and Jury Demand against Defendants, Tyler Cardiovascular Consultants, P.A., for age, race, sex and national origin discrimination, retaliation, Violation of the Equal Pay Act, Lilly Ledbetter Pay Act of 2009, denial of due process and conversion.  In support thereof, Plaintiff respectfully states as follows:

### I.   PARTIES

1. Plaintiff **DEBBIE BLEVINS aka DEBORAH MARIE BLEVINS** is a Caucasian female, United States Citizen, born on December 3, 1967, and who resides in Tyler, Smith County, Texas.

2. Defendant **TYLER CARDIOVASCULAR CONSULTANTS, P.A.** is a Texas Professional Association with it headquarters located at: 619 South Feishel, Suite #101, Tyler, Smith County, Texas 75701 and who may be served

with process by serving its registered agent of service **David A. Hector, III at: 619 South Feishel, Suite #101, Tyler, Smith County, Texas 75701**.

3. At all times relevant herein, Tyler Cardiovascular Consultants, P.A. has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 28 U.S.C. §1331 (federal question), 28 U.S.C. § 1337, 28 U.S.C. §1343 (civil rights), 28 U.S.C. 1345, 29 U.S.C. § 626(b) (ADEA Enforcement) and 42 U.S.C. §2000e-5(f)(1) and (3) (Title VII Enforcement) and 42 U.S.C. § 1981a.

## III. PENDANT STATE LAW CLAIMS

5. Plaintiff invokes this Court's jurisdiction pursuant to Rule 18(a) of the Federal Rules of Civil Procedure and 28 U.S.C. 1367 hear and adjudicate claims arising out of the transactions set forth herein that violate rights and duties established by the laws of the State of Texas.

6. The actions of the Defendant are further actionable under the Texas Commission on Human Rights Act and all of the above and foregoing allegations are incorporated into this claim by reference.

## IV. VENUE

7. The employment practices of Defendant alleged to be unlawful were committed within the jurisdiction of the Eastern District of Texas, Tyler Division. In addition, Defendant conducts business and Plaintiff resides within the same judicial district. Accordingly, venue is proper pursuant to 28 U.S.C. §1391.

## V.     EXHAUSTION OF ADMINISTRATION REMEDIES

8.     Prior to filing this action, Plaintiff timely filed her written charge asserting violations of the Equal Pay Act and discrimination with the Equal Employment Opportunity Commission ("EEOC") within the appropriate number of days.  In conformance with the law, Plaintiff has filed this action subsequent to the expiration of ninety (90) days from the date of receiving her right to sue letter from the EEOC and within two (2) years after Defendant willfully violated Plaintiff's rights under the ADA and ADEA.  Plaintiff has exhausted all administrative remedies; therefore all conditions precedent to the Plaintiff maintaining this civil action have accrued, occurred, or been waived.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

## VI.     STATEMENT OF FACTS

9.     Defendant hired Plaintiff in January 1991.  During Plaintiff's Twenty (20) years of service with Defendant, Plaintiff was a LVN for the entire time and a supervisor for Nineteen (19) years.

10.     Defendant terminated Plaintiff on August 9, 2010.

11.     During Plaintiff's employment with Defendant, Plaintiff was never the subject of any disciplinary actions or warnings.

12.     During her Nineteen (19) years of experience as a Director of Nursing, Blevins has won numerous accolades for her work, from her managers, peers and subordinates.

13.     Despite her great experience and strong work ethic, for no cause, Blevins employment was terminated by Defendant immediately prior to Blevins seeking her retirement benefits.

14. Meanwhile Defendants assigned duties performed by Plaintiff to similarly situated employees who are younger, female and male employees, Hispanic or of foreign origin. Defendants have a pattern of giving preferred assignments to younger, favorite female employees and less preferable work to older employees.

15. Besides complaining in writing of violations of the Equal Pay Act, age, race, gender, sex discrimination, favoritism, discrimination, ethics violations and HIPAA violations, Blevins has spoken with management who have failed and refused to take any corrective action.

16. Instead of addressing Blevins concerns management for no cause terminated her employment cheating Blevins out of her retirement, a clear act of retaliation against Blevins as she participated in protected activities.

17. Prior to the termination of Plaintiff, Defendant retaliatory actions and discriminatory behavior toward Blevins increased when Defendants instituted a pattern of deliberate retaliation towards Blevins in the form of disparaging criticism that is not constructive but rather generated to little by little eat away at Blevins character.

18. In one specific instance Defendants accused Blevins of stealing personnel file documents, an accusation that is simply not true.

19. On another occasion Defendants posted derogatory comments aimed at Plaintiff on social networking website.

20. Defendants continuing with their hostile work environment without patience consent, caused pictures of a sedated patient undergoing a cardiac catheterization with Dr. David A. Hector at the catheter lab at Trinity Mother

Frances Hospital in Tyler, Texas, to be posted on the social networking website face book for the world to see; a clear violation of HIPAA, privacy laws, ethical standards and basic morals.

21.     However to this date Trinity Mother Frances Hospital in Tyler, Texas has taken NO disciplinary action against Dr. David A. Hector.

22.     Further to date Trinity Mother Frances Hospital in Tyler, Texas has taken NO steps to prevent this type of illicit behavior from re-occurring.

23.     Interestingly enough when reviewing Defendants conduct a pattern seems to exist where other pictures of sedate patients were posted on social networking websites.

24.     Defendant provides a handbook of policies to its employees wherein it describes a various rules, policies, benefits and discipline policy.  However Defendant violates its own handbook of policies.

25.     Defendant never provided sexual harassment training to Plaintiff.

26.     Defendant never provided diversity training to Plaintiff.

## VII.    DAMAGES

27.     As a direct and proximate consequence of Defendant's unlawful and discriminatory employment policies and practices, Plaintiff has suffered losses including, but not limited to, back pay, front pay, loss of wages and benefits in the past and future, costs of court, expert fees and attorney fees, mental anguish, humiliation and emotional distress in the past and future, prejudgment and post judgment interest, benefits, special damages, expenses, punitive/liquidated damages, and punitive damages, all to be specified at trial and any injunctive

relief deemed appropriate and available under the statute which Plaintiff brings this action.

## VIII.   CAUSES OF ACTION

## COUNT ONE – AGE EMPLOYMENT DISCRIMINATION

## EQUAL PAY ACT - LILLY LEDBETTER FAIR PAY ACT OF 2009

28.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 27 as if fully stated herein.  Defendant is the subject to the ADEA and Chapter 21 of the Texas Labor Code.  The ADEA and Texas Labor Code prohibit employment discrimination on the basis of age against individuals 40 years of age and older.

29.   This lawsuit is brought under 42 U.S.C. §2000 et. seq. (Title VII) and its counterpart 42 U.S.C. §1981.  Title VII and §1981 prohibit employers from discriminating "against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin.  *See:* 42 U.S.C. §2000e-2(a) and Lilly Ledbetter Fair Pay Act of 2009.  Plaintiff would show that (i) she is a member of a protected class; (ii) that she was qualified for the position; (iii) that she suffered an adverse employment action; and (iv)others outside the class who were similarly situated were treated more favorably than she was treated.

30.   Of all directors employed by Defendant, Plaintiff was the lowest paid director with the largest amount of employment responsibilities.  Defendant does not follow its own merit system for raises, nor does Defendant follow its disciplinary procedures to ascertain worthiness.  Defendant relies on the old buddy system by rewarding its favorite employees without rhyme or reason.

31. Plaintiff was a protected employee under the ADEA, Lilly Ledbetter Fair Pay Act of 2009 and the Texas Labor Code at the time of her termination because she was 43 years old.

32. Plaintiff was qualified for the position and was performing her duties satisfactorily, despite Defendants' willful termination.

33. Plaintiff was replaced by a significantly younger individual.

34. Defendant intentionally and willfully discriminated against Plaintiff and other employees over the age of 43 via acts of termination, retaliation and harassment.

## **COUNT TWO – RACE, NATIONAL ORGIN AND SEX EMPLOYMENT DISCRIMINATION**

35. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 34 as if fully stated herein.

36. Throughout the course of employment with Defendant, Plaintiff time and again suffered unproductive disparaging remarks.

37. The disparaging remarks continued unabated throughout the remainder of Plaintiff's employment with Defendant.

38. On August 9, 2010, Defendant under the guise of position elimination terminated Plaintiff's employment.

39. Defendants' actions constitute unlawful discrimination under federal and state law. Specifically Plaintiff's race (Caucasian), national origin (American), and/or sex (female) were motivation factors in Defendants' acts and omissions complained of herein.

40. Even before Plaintiff was terminated, Defendant had knowledge of allegations that disparaging remarks were being made about Plaintiff.

41. Non-Anglo employees other than Plaintiff have been subjected to a hostile work environment, in violation of Title VII.

42. The unlawful employment practices complained of herein were intentional.

43. The unlawful employment practices complained of herein were done with malice or reckless indifference to the federally protected rights of Plaintiff and other Caucasian employees of Defendant.

44. As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with his employment.

45. As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-pecuniary losses, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  Because of these losses Plaintiff seeks compensatory damages.

46. Defendants' actions were done with malice and/or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore entitled to punitive damages.

47. Plaintiff also seeks reasonable attorneys' fees, court costs and including reasonable expert fees.

### COUNT THREE - HOSTILE WORK ENVIRONMENT

48. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 47 as if fully stated herein.

49. Plaintiff will Prove a Hostile Work Environment by establishing her prima facia case by showing as follows:

    1) there was unwelcome harassment;

    2) the harassment was based on sex, race, color, national origin or religion; (age or disability - under different statutes)

    3) the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and

    4) there is some basis for imposing liability on the employer.

50. In addition to the unequal pay between males and females, Defendant always provided better treatment to their favorites, whether their favorite be female nurses, male directors or others.

51. Although Defendant knew of the hostile work environment, Defendant took NO remedial action to stop current hostile work activities and prevent those type of unlawful activities from occurring in the future.

52. Defendant willingly, knowingly and intentionally allowed the hostile work environment to exist and in some ways supported its very existence by the Defendants acts or failure to act.

53. Example number one. A select group of nurses saw themselves as privileged from the other members of the nursing department. Those individuals begin telling staff that the nurses that worked one on one with the physicians were afforded special privileges and were the exceptions to policy and procedures. Favoritism runs rampant within Defendants work environment. Plaintiff began working on this issue, but was met with strong resistance by a few

**PLAINTIFF'S ORIGINAL COMPLAINT**     9

nurses and management.  This prevented Plaintiff from taking the necessary steps needed to stop this type conduct.

54. Example number two.  Management participated in secret meetings at off sight locations with nurses to discuss Plaintiff and Plaintiff's management in an effort to undermine Plaintiff performing her job duties.

55. Example number three.  Hospital nurses began saying rude and unprofessional things about Plaintiff in the Nursing Stations of the clinic and in some cases such disparaging remarks were said in the presence of the physician managers who made no effort to stop the activity.  When this was reported to management no corrective action was taken.

56. Example number four.  Defendant continuing with their hostile work environment without patient consent, caused pictures of a sedated patient undergoing a cardiac catheterization with *Dr. David A. Hector* in the catheter lab at *Trinity Mother Frances Hospital* in *Tyler, Texas*, to be posted on the social networking website face book for the world to see; a clear violation of HIPAA, privacy laws, ethical standards and basic morals.  However to this date *Trinity Mother Frances Hospital* in *Tyler, Texas* has taken NO disciplinary action against *Dr. David A. Hector*.  Nor has *Trinity Mother Frances Hospital* in *Tyler, Texas* taken any steps to prevent this type of illicit behavior from re-occurring.  Interestingly enough when reviewing Defendants conduct a pattern seems to exist where other pictures of sedated patients were posted on social networking websites, including a former player for the **Dallas Cowboys**.

57. Example number five.     In a Board meeting, *Mr. John Bufe* an attorney with *Potter Minton, P.C. in Tyler, Texas* told the physicians they should support

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                 **10**

Plaintiff in her role as manager and the physicians should not be involved with their personal nurses responsibility to management.  At that time **Mr. Bufe** agreed that a hostile work environment for many of the nurses was being condoned and steps should be taken to end this type of conduct.  **Mr. Bufe** also encouraged the physicians to allow proper reprimand for policy violations against their nurses.  Despite having this knowledge and guidance Defendant took no remedial action and continued with its hostile work environment.

58.     Example number six.     Part of Plaintiff's job duties were to handle complaints coming in on the compliance and ethics hotline.  Each time Plaintiff attempted to address a complaint with management her efforts were thwarted by Defendant.

59.     Example number seven.   In Late 2009, **Dr. David Dick** made it known that he did not like me and he was going to get rid of me.  In January 2010, **Dr. David Dick** became Managing Partner and true to his word without cause in late 2009 **Dr. David Dick** caused the termination of Plaintiff on August 9, 2010 under the ruse of elimination of position within the company.

60.     Example number eight.    After Plaintiff filed her complaint with the EEOC Defendant claimed Plaintiff had stolen files, which is simply just not true.

61.     Example number eight.   Defendant condoned the abusive, unprofessional and belligerent conduct of **Mr. Gregg Murphy**, Director of Research on day-by-day basis. In March 2010, **Mr. Murphy** erupted where he was screaming at 7 female nursing department employees and 1 patient and cussing in the break room and hallway.  Such offensive behavior and language restrictions are contained with in the employee handbook, however when

reported to management Defendant took no disciplinary action or corrective action to prevent this type conduct in the future.  **Mr. Murphy** is known to have a terrible temper and a big mouth at meetings.  Although **Mr. Murphy's** history shows numerous incidents Defendant did nothing.  In fact **Mr. Murphy's** conduct was rewarded with a raise in January 2010.  Another shining example of favoritism as it exist within Defendant's working environment.

62. Defendant allowed, failed to take any action, failed to take remedial action, failed to discipline its employees, failed to separate the employees, and/or failed to take corrective action encouraging a hostile work environment and retaliating against employees who complain of such conduct.

## COUNT FOUR – WRONGFUL TERMINATION

63. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 62 as if fully stated herein.

64. During the course of Plaintiff's employment, Defendant, acting through its agents and vice principals, in a continuous course of conduct, discriminated against Plaintiff in the terms, conditions and privileges of her employment due to her age, race, national origin, sex and due to retaliation for having participated in an EEOC proceeding and/or for having opposed conduct which she had a good faith belief was discriminatory on the basis of age, race, national origin, sex and retaliation including in that:

    A. Defendants, through their agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of her employment in retaliation for her filing a charge of discrimination with the EEOC and/or

participating in a proceeding with that agency against her former employer and/or because she opposed discrimination and retaliation at Defendants' place of employ. Plaintiff also asserts that the Defendant has engaged in age, race, national origin and sex discrimination by replacing her with a substantially younger person with little or no experience as director of nursing in the industry in violation of the law.

65. Plaintiff further alleges that Defendant engaged in the conduct described herein with malice or reckless indifference to the protected statutory rights of its employees, including Plaintiff.

66. Plaintiff further alleges that Defendants' age, race, national origin and sex discrimination and retaliation conduct in violation of the ADEA is willful under the ADEA.

## COUNT FIVE – UNJUST ENRICHMENT
## OF RETIREMENT AND OTHER BENEFITS

67. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 66 as if fully stated herein.

68. Defendant unfairly retained benefits of Plaintiffs' by chance, mistake or another's misfortune for which the Defendant has not paid or worked and therefore morally and ethically should not keep. Defendant who has been unjustly enriched at the expense of Plaintiff must legally return the unfairly kept money or benefits.

69. For all the reasons outlined herein Defendant was unjustly enriched when Defendant unlawfully terminated Plaintiff and then retained Plaintiffs' benefits for itself thereby saving itself monies it would otherwise have to pay third parties for

those benefits.

## COUNT SIX - RETALIATION

70. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 69 as if fully stated herein.

71. It is unlawful to retaliate against an individual for opposing discriminatory employment practices or for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under the ADEA, Title VII and/or the Texas Labor Code.

72. Defendant further violated Plaintiff's civil rights by taking adverse actions against her in response to her complaints about the discriminatory working conditions that ultimately resulted in unlawful termination of employment.

## IX.    INJUNCTIVE RELIEF

73. Plaintiff restates, realleges, reavers and hereby incorporates by reference any and all allegations of Paragraphs 1 through 71, inclusive, herein. In addition, Plaintiff alleges that Defendant's discriminatory actions herein must be enjoined by this Court in order to force Defendant to comply with the law. It is suggested that the injunction be specific in enjoining Defendant and its' employees, agents and representatives.

74. That this Court reinstate Plaintiff with full restoration of all rights, seniority and benefits.

75. That this Court retain jurisdiction for five (5) years to make sure Defendant is complying with the law.

## X.    DEMAND FOR A TRIAL BY JURY

76. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action. *See also:* U.S. Const. Amend. 7. In accordance with the Federal Rules, this jury demand is being filed with the Clerk of the United States District Court for the Eastern District of Texas, Tyler Division as required by Fed. R. Civ. P. 5(d) and Fed. R. Civ. P. 38(b).

## XI.  PRAYER

**WHEREFORE**, Plaintiff respectfully prays this Court to:

a. Defendant be summoned to appear and answer herein;

b. Issue a declaratory judgment that Defendant's acts, practices, and procedures, complained of herein violated Plaintiff's right as secured under Title VII, and or the Age Discrimination in Employment Act , or like state statutes:

c. Grant to Plaintiff a permanent injunction enjoining Defendant, its officers, gents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert; or participation with them and at their direction, from engaging in any employment policy or practice shown to discriminate against Plaintiff in violation of Title VII on the basis of sex, Age Discrimination in Employment Act on the basis of age, national origin, race, and or like state statutes;

d. Grant to Plaintiff a judgment for her back pay, reinstatement to her former position, and reimbursement for lost fringe benefits, training and promotional opportunities and other appropriate relief to redress the discriminatory practices complained of herein, in an amount not greater than $1,250,000.00 at the time of filing;

e. Retain jurisdiction over this action to assure full compliance with the orders of this Court and with applicable law;

f. Award her judgment for her damages for pain and suffering, mental anguish and for the humiliation caused by Defendant's unlawful treatment in the amount no greater than $5,000,000.00;

g. Plaintiff prays for an award of punitive damages in an amount believed by the court to be appropriate to punish Defendant for the willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future, but no greater than $10,000,000.00;

h. Plaintiff prays that the Court award Plaintiff costs and expenses of this action and award Plaintiff reasonable attorney fees as provided in Title VII 42 U.S.C.A. §2000e, et. seq.; the Age Discrimination in Employment Act; and or like state statutes;

i. Alternatively, in the absence of an order for reinstatement, Plaintiff seeks an award of judgment against Defendant for her forward pay, for lost fringe benefits, training and promotional opportunities and other appropriate relief to age of retirement, to redress the discriminatory practices complained of herein, in an amount not greater than $1,250,000.00 at the time of filing;

j. Plaintiff, in accordance with her rights under the United States and Texas Constitutions, and statutory rights under Title VII 42 U.S.C. §2000e-5(k); the Age Discrimination in Employment Act; and or like state statutes demands a trial by jury on issues triable to a jury;

k. Pre-judgment interest accruing at the rate of Six per cent (6%) per annum[1] from August 9, 2010 until the date of judgment;

l. Post-judgment interest at the rate of Eighteen per cent (18%) per annum or at the highest legal or contractual rate allowed by law from the date of judgment until the judgment is paid;

m. Judgment in the amount of Twenty Five Thousand Dollars **($25,000.00)** as initial attorney's fees plus additional attorney's fees when incurred in prosecution of this lawsuit, if Defendant does not appeal this judgment this to the Fifth Circuit Court of Appeals and time for appeal to that court has expired, Defendant shall be entitled to a remittitur of Three Thousand Five Hundred Dollars ($3,500.00), against the judgment for attorney's fees; and if Defendant does not appeal from the Court of Appeals to the Supreme Court of the United States and time for that appeal has expired, Defendant shall be entitled to a remittitur of ($2,500.00) against the judgment for attorney's fees;

n. All costs of court;

o. All expert witness fees incurred in the preparation and prosecution of this action;

p. All court reporter fee incurred in the preparation and prosecution of this action;

---

[1] If no specific rate of interest is agreed on by the parties, 6 percent annual interest, starting thirty days after the amount is due and payable, maybe charged.  Tex. Const. art. XVI, § 11; Tex. Fin. Code Ann. §302.002 (Vernon Supp. 2003); see: *Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (Tex. 1980).  This is sometimes referred to as "legal Interest."  T Fin C §§ 301.002(a)(8), 302.002.

**PLAINTIFF'S ORIGINAL COMPLAINT** 17

q. Plaintiff be granted all writs necessary to enforce the judgment of this Court; and

r. Plaintiff be awarded such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, or proper by the Court.

Respectfully submitted, this ___ day of December, 2010, by:

_____
HIRAM McBETH, III, ESQ.
SBT No. 13329500
6060 North Central Expwy, Suite #560
Dallas, Texas 75206
Tel:  (972) 498-8702
Fax:  (972) 674-3111
**ATTORNEY FOR PLAINTIFF**